IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CR3168 |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES BYRON CRAFT, | ) | REPORT, RECOMMENDATION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

The defendant was indicted by a grand jury for violating 18
U.S.C. § 2250(a).  Filing 1.  Specifically, the indictment
alleges:

> From on and about September 1, 2007, and continuing
> until on or about November 28, 2007, in the District of
> Nebraska, JAMES BYRON CRAFT, having previously been
> convicted in the State of Nebraska of an offense
> requiring him to register as a sex offender to wit:
> Attempted First Degree Sexual Assault, traveled in
> interstate commerce from South Dakota to Nebraska, and
> knowingly failed to register and update a registration
> as a sex offender in the States of Nebraska, where he
> resided, and South Dakota, as required by the Sex
> Offender Registration and Notification Act.

Filing 1.

The defendant has moved to dismiss this indictment.  Filing
16.  An evidentiary hearing was held on defendant's motion, and
the parties have thoroughly briefed the issues.  Based on the
evidence and applicable law, I find the defendant's motion to
dismiss must be denied.

FINDINGS OF FACT

The facts are undisputed.  The factual record consists of a
written statement of stipulated facts, (see ex. 101), and

exhibits, (see exs. 1, 2, & 102-107).  No testimony was offered at the evidentiary hearing.  The following outlines the relevant portions of the documentary evidence received on defendant's motion to dismiss.

The defendant was convicted of first degree sexual assault, a class III felony under Nebraska law, (Neb. Rev. Stat. § 28-201), on September 6, 2002.  He was sentenced to four years of probation.  Ex. 101, ¶ 1.  This judgment of conviction was entered by the District Court of Howard County, Nebraska.  Ex. 2, p. 4.

In accordance with the Nebraska Sex Offender Registration Act, (Neb. Rev. Stat. 29-4001 to 29-4014), the defendant initially registered as a sex offender in Nebraska's sex offender registry on October 10, 2002.  Exhibit 1, p. 2.  On March 20, 2003, the defendant was provided with a written notice of his continuing obligation to provide information to the Nebraska Sex Offender Registry under Nebraska law.  Exhibit 1, pp. 9-10.  The notice advised the defendant that he was required to register with the sheriff of the county where he was residing, whether permanently or only temporarily, within five days after his sentencing.  The notice further stated that for at least ten years after completing his sentence for first degree sexual assault, the defendant was required to: 1) confirm his residential information at least annually, and 2) if he moved to a new residential location, provide written notice of the change of address to the sheriff of his former county of residence within five days after moving, provide notice of his change of residential address within five days to the sheriff of any Nebraska county to which he moved, and if he moved to another state, register as a sex offender in accordance with that state's

2

law.  The defendant was notified that if he resided in one
Nebraska county, but attended school or worked in another
Nebraska county, he must timely register with the sheriff in both
counties; if he resided out-of-state, but was employed or going
to school in Nebraska, he must register with the sheriff of the
county where he was employed or attending school within five days
after his employment or schooling began; and if he resided in
Nebraska but attended school or worked in another state, he must
comply with both states' sex offender registration laws.  Ex. 1,
pp. 9-10.  See also Neb. Rev. Stat. § 29-4004 (exhibit 105, pp.
4-5).  The notice warned that the defendant could be criminally
prosecuted if he failed to comply with Nebraska's sex offender
registration law.  Ex. 1, p. 10 (see also Neb. Rev. Stat. §
29-4011; ex. 105, p. 16).  The defendant signed this notice,
thereby acknowledging that he read the notification and
understood his obligations and the potential consequences of
failing to comply with Nebraska's sex offender registration law.
Ex. 1, p. 10.

    Between October 10, 2002 and February 23, 2007, the
defendant moved to different residential locations within
Nebraska and updated his Nebraska sex offender registration at
least ten times.  Ex. 1, pp. 2-3.  The defendant's sentence of
probation was terminated on May 29, 2007.  Ex. 1, p. 4.

    On August 2, 2007, the defendant submitted a change of
information form to the Nebraska Sex Offender Registry which
stated he was moving to Yankton, South Dakota.  Ex. 1, pp. 6-7.
He moved to a residence in Yankton, South Dakota on August 4,
2007, (ex. 2, p. 2), and registered as a sex offender under South
Dakota's sex offender registration law on August 9, 2007.  Ex. 2,
p. 3.

The defendant was arrested in Grand Island, Hall County, Nebraska on November 28, 2007.  Upon investigation, the Hall County Sheriff's Office discovered the defendant had applied for and obtained employment in Nebraska on November 9,2007, with his employment documentation listing a Grand Island, Nebraska residential address.  Ex. 101, ¶ 3.

The defendant was indicted by a federal grand jury on or about December 11, 2007 for violating the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16911 et seq., ("SORNA").  Filing 1.  The indictment alleges the defendant is a convicted sex offender, and during the time frame beginning on or about September 1, 2007 until November 28, 2007, he traveled from South Dakota to Nebraska and knowingly failed to update the Nebraska and South Dakota Sex Offender Registries as required under those states' laws.  Filing 1.

The United States Attorney General has promulgated proposed guidelines for state implementation of SORNA.  See exhibit 104.  These proposed guidelines were published in the May 30, 2007 Federal Register, with the period for comment ending on August 1, 2007.  However, the Attorney General's proposed guidelines have not yet been finalized.  Exhibit 101, ¶ 4.

Nebraska continues to operate it sex offender registry in accordance with the terms of the Nebraska Sex Offender Registration Act, (Neb. Rev. Stat. § 29-4001 et seq., (see ex. 105)), and has not implemented the United States Attorney General's proposed guidelines for state compliance with SORNA.  Ex. 101, ¶ 5.  Nebraska's current change of information form for sex offender registration does not mention SORNA, and does not notify those completing the form that failing to register as a

4

sex offender may result in criminal prosecution under federal
law.  Ex. 107.

LEGAL ANALYSIS

I.    The federal Sex Offender Registration and Notification
      Act ("SORNA").

The Adam Walsh Child Protection and Safety Act of 2006 was
enacted "[t]o protect children from sexual exploitation and
violent crime, to prevent child abuse and child pornography, to
promote Internet safety, and to honor the memory of Adam Walsh
and other child crime victims."  Pub. L. No. 109-248, 120 Stat.
587 (July 27, 2006).  Title I of the Adam Walsh Act codified the
"Sex Offender Registration and Notification Act," 42 U.S.C. §
16911 et seq., ("SORNA").  The purpose of SORNA is "to protect
the public from sex offenders and offenders against children" by
establishing "a comprehensive national system" for the
registration of sex offenders.  42 U.S.C. § 16901.  Pursuant to
SORNA, each jurisdiction (including each state) must maintain "a
jurisdiction-wide sex offender registry" that conforms to the
requirements of SORNA.  See 42 U.S.C. § 16911(10)
(defining"jurisdiction") & 42 U.S.C. § 16912(a).  A jurisdiction
that fails to timely comply with the requirements of SORNA "shall
not receive 10 percent of the funds that would otherwise be
allocated for that fiscal year to the jurisdiction" for local law
enforcement and justice assistance programs.  42 U.S.C. § 16925.
See also, 42 U.S.C. § 3750 et seq.

Under SORNA, "an individual who was convicted of a sex
offense," (42 U.S.C. § 16911(1)(defining "sex offender")), must
"register, and keep the registration current, in each
jurisdiction where the offender resides, where the offender is an

5

employee, and where the offender is a student." 42 U.S.C. §
16913(a). "For initial registration purposes only, a sex
offender shall also register in the jurisdiction in which
convicted if such jurisdiction is different from the jurisdiction
of residence." 42 U.S.C. § 16913(a). Within three business days
after any change of "name, residence, employment, or student
status," sex offenders must appear in person in at least one
jurisdiction involved and notify that jurisdiction of all changes
in the information which must be reported to the sex offender
registry. 42 U.S.C. § 16913(c).

SORNA sets forth the following initial registration
requirements for those convicted of sex offenses: sex offenders
serving a prison sentence must register before completing their
term of imprisonment, and those not sentenced to prison must
register within three business days after sentencing. 42 U.S.C.
§ 16913(b). 42 U.S.C. § 16913(d), entitled "Initial registration
of sex offenders unable to comply with subsection (b) of this
section," states:

> The Attorney General shall have the authority to
> specify the applicability of the requirements of this
> subchapter to sex offenders convicted before July 27,
> 2006 or its implementation in a particular
> jurisdiction, and to prescribe rules for the
> registration of any such sex offenders and for other
> categories of sex offenders who are unable to comply
> with subsection (b) of this section.

42 U.S.C. § 16913(d).

Pursuant to the authority cited in 42 U.S.C. § 16913(d), the
Attorney General issued an interim rule on February 28, 2007
which stated:

> The requirements of the Sex Offender Registration and
> Notification Act apply to all sex offenders, including
> sex offenders convicted of the offense for which
> registration is required prior to the enactment of that
> Act.

28 C.F.R. § 72.3.

Pursuant to SORNA, "shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender," an appropriate official must ensure that the sex offender is registered, inform the sex offender of the duties required under SORNA, and explain those duties.  42 U.S.C. § 16917(a)(1) & (3). The sex offender must "read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement."  42 U.S.C. § 16917(a)(2).  However, Congress apparently anticipated that compliance with the registration and notice requirements of 42 U.S.C. § 16917(a) would be impossible in some circumstances.  It therefore enacted 42 U.S.C. § 16917(b), which directs the Attorney General to adopt notice and registration rules governing such circumstances.

Although Congress tasked the Attorney General with the responsibility for issuing "guidelines and regulations to interpret and implement" SORNA, (42 U.S.C. § 16912(b)), other than the previously cited interim rule, the Attorney General has proposed, but has not finalized and adopted any such guidelines and regulations.  Currently, the information the sex offender must provide under SORNA's statutory language mirrors that

required under the Nebraska Sex Offender Registration Act.[1]
Specifically, a sex offender must provide:

> (1) The name of the sex offender (including any alias
> used by the individual).
>
> (2) The Social Security number of the sex offender.
>
> (3) The address of each residence at which the sex
> offender resides or will reside.
>
> (4) The name and address of any place where the sex
> offender is an employee or will be an employee.
>
> (5) The name and address of any place where the sex
> offender is a student or will be a student.
>
> (6) The license plate number and a description of any
> vehicle owned or operated by the sex offender.

42 U.S.C. § 16914(1-6).  Compare to ex. 106 (Neb. Admin. Code,
Title 272, Ch. 19 (December 9, 2003), § 006.06; ex. 107 ("State
of Nebraska Sex Offender Registration Change of Information"
form).  SORNA sets periodic requirements for obtaining current
photographs from sex offenders, (42 U.S.C. § 16916), and sex
offenders are required to keep their registrations current for no
less than fifteen years, and up to the life of the offender,
depending on the "tier" level of offense.  42 U.S.C. § 16915(a).

The Attorney General is required to maintain at the Federal
Bureau of Investigation the "National Sex Offender Registry," a
national database of all registered sex offenders, (42 U.S.C. §

---

[1]In addition to the specific information listed in 42 U.S.C.
§ 16914 as recited in the text above, 42 U.S.C. § 16914(7)
requires sex offenders to provide "[a]ny other information
required by the Attorney General."  As explained previously, the
United States Attorney General has not finalized and adopted
guidelines and regulations for implementing SORNA.

8

16919); maintain a public website that includes relevant sex offender information, (42 U.S.C. § 16920); and implement multi-jurisdictional training, conferences, and meetings to facilitate the implementation of SORNA.  The Attorney General is tasked with developing computer software to assist the states' and other jurisdictions' efforts in establishing and operating uniform sex offender registries and internet sites.  The deadline for creating this software is July 27, 2008.  42 U.S.C. § 16923. Each jurisdiction is required to implement SORNA on or before July 27, 2009 or within one year after the computer software is developed, whichever occurs later.  42 U.S.C. § 16924.  The Attorney General is authorized to award grants to jurisdictions for offsetting the costs of implementing SORNA.  42 U.S.C. § 16926.

The Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") was created to administer the standards for the sex offender registration and notification program under SORNA, administer the congressionally authorized grant programs for implementing SORNA, and cooperate with and provide technical assistance to public and private entities related to sex offender registration and notification for the "protection of children or other members of the public from sexual abuse or exploitation."  42 U.S.C. § 16945.  See ex. 104.

SORNA requires jurisdictions to notify the Attorney General and appropriate law enforcement agencies if a sex offender fails to comply with the federal sex offender registration requirements, and the Attorney General and law enforcement agencies are required to respond by taking appropriate action to enforce compliance.  42 U.S.C. § 16922.  See also, 42 U.S.C. §

16941 (allowing appropriation of federal funds and resources to
"assist jurisdictions in locating and apprehending sex offenders
who violate sex offender registration requirements."). To that
end, the Adam Walsh Child Protection and Safety Act amended Title
18 of the United States Code, creating a federal crime and
enhancing criminal penalties for failing to register as required
under SORNA. See 18 U.S.C. § 2250 (Pub. L. No. 109-248, § 141,
120 Stat. 587, 601 (July 27, 2006)).

        II.  Defendant's Motion to Dismiss.

        A.    Standard of Review.

        An indictment is sufficient if it includes the elements of
the offense, provides adequate notice of the charge, and enables
the defendant to plead double jeopardy as a bar to further
prosecution. Hamling v. U.S., 418 U.S. 87 (1974); U.S. v.
Hernandez, 299 F.3d 984, 992 (8th Cir. 2002); U.S. v. Diaz-Diaz,
135 F.3d 572, 575-76 (8th Cir. 1998). "An indictment will
ordinarily be held sufficient unless it is so defective that it
cannot be said, by any reasonable construction, to charge the
offense for which the defendant was convicted." Hernandez, 299
F.3d at 992.

        To obtain a criminal conviction under 18 U.S.C. § 2250, the
government must prove: 1) the Defendant is a sex offender
subject to registration under SORNA,(18 U.S.C. 2250(a)(1)); 2)
federal jurisdiction exists either because the defendant was
convicted as a sex offender under federal law or because the
defendant traveled in interstate or foreign commerce, (18 U.S.C.
2250(a)(2)(A) and 2(B)); and the defendant knowingly failed to
register or update his sex offender registration as required, (18

10

U.S.C. 2250(a)(3)).  <u>U. S. v. Cardenas</u>, 2007 WL 4245913, 13 (S.D.
Fla. Nov. 29, 2007); <u>U.S. v. Hinen</u>, 487 F. Supp. 2d 747, 750
(W.D. Va. 2007).  The grand jury indictment against defendant
Clark alleges the essential elements of the crime of failing to
register as required under SORNA.

     An evidentiary hearing was held on defendant's motion to
dismiss.  A court cannot dismiss a facially valid indictment
because it weighed the evidence supporting a probable cause
finding and concluded the indictment is supported by incompetent
or insufficient proof.

>     If indictments were to be held open to challenge on the
>     ground that there was inadequate or incompetent
>     evidence before the grand jury, the resulting delay
>     would be great indeed.  The result of such a rule would
>     be that before trial on the merits a defendant could
>     always insist on a kind of preliminary trial to
>     determine the competency and adequacy of the evidence
>     before the grand jury.  This is not required by the
>     Fifth Amendment.  An indictment returned by a legally
>     constituted and unbiased grand jury, like an
>     information drawn by the prosecutor, if valid on its
>     face, is enough to call for trial of the charge on the
>     merits.  The Fifth Amendment requires nothing more.

<u>Costello v. U.S.</u>, 350 U.S. 359, 363 (1956).  See also <u>U.S. v.
Williams</u>, 504 U.S. 36, 55 (1992)(a court cannot dismiss
an otherwise valid indictment even if the prosecutor failed
to present exculpatory evidence to the grand jury); <u>U.S. v.
Johnson</u>, 767 F.2d 1259, 1275 (8th Cir. 1985)(a facially valid
indictment should not be dismissed for insufficient evidence if
there is some competent evidence to sustain the charge issued).

      However, although there is limited authority on the issue,
a trial court may consider evidence on pretrial motions to
dismiss in cases, such as this one, "where the operative facts

are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." U.S. v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994).  See also U.S. v. Risk, 843 F.2d 1059 (7th Cir. 1988)(holding that pretrial dismissals based on the undisputed facts may be warranted where the government fails to timely object).

B.  Defendant's Claims for Dismissal.

The defendant claims the indictment must be dismissed because:  1) Nebraska never implemented SORNA's sex offender registration requirements, and therefore he could not "knowingly" violate SORNA and any prosecution under SORNA violates due process because he lacked notice of SORNA's registration requirements; 2) Congress lacked any authority under the Commerce Clause to enact SORNA because sex offenses are purely local in nature, have no economic or commercial character, and do not impact or affect commerce; and 3) Congress' attempt to compel the states to adopt and enforce the requirements of a federal sex offender registration program violates the Tenth Amendment.

The parties have not cited, and the court has not found, federal Supreme or Circuit Court case law on the issues raised by the defendant.  However, as the following discusses, the defendant's claims for dismissal have been addressed by several federal district courts throughout the nation, the vast majority of which have denied the arguments and analysis advanced by the defendant.

    1.    The Defendant cannot be prosecuted for "knowingly"
          violating SORNA and lacked sufficient notice as
          required under the Due Process Clause.

The defendant argues:


Section 2250 makes it a crime to "knowingly fail to
register or update a registration as required by the
Sex Offender Registration and Notification Act."
Craft's conduct took place before SORNA had been
accepted and implemented by the State of Nebraska
through state legislation. . . . [Therefore], Craft
was not given any notice that there were now additional
requirements of him or that there were now federal
penalties for failure to comply with the federal law.
Craft should not be prosecuted federally for committing
a crime that has not even been implemented in the state
of Nebraska.   In other words, it was impossible for
Craft to "knowingly" fail to register "as required by"
SORNA because he had no notice or knowledge of the
registration requirements.

Filing 17, pp. 4-5.   The defendant argues that since he was

unaware of the federal sex offender registration law or that he

could be prosecuted under both state and federal law for failing

to update his sex offender registration, 1) he could not

"knowingly" violate SORNA, and 2) he lacked the notice required

under the Due Process Clause.


     Although 42 U.S.C. § 16917(a) states that an official must

give notice to a sex offender shortly before his release from

custody, or immediately after sentencing if the offender is not

sentenced to prison, receipt of notice as required under §

16917(a) is not an element of a 18 U.S.C. § 2250 offense.   U.S.

v. Samuels, 2008 WL 169792, at *4 (E.D. Ky. Jan. 17, 2008); U.S.

v. Dixon, 2007 WL 4553720, at *4 (N.D. Ind. Dec. 18, 2007); U.S.

v. Lovejoy, 516 F. Supp. 2d 1032, 1037 (D.N.D. 2007).   The

indictment against the defendant alleges the defendant

"knowingly" violated SORNA.  Therefore, the indictment itself alleges sufficient facts to support the defendant's prosecution. Any further determination as to whether the defendant possessed the requisite knowledge is a factual issue for trial and should not be decided on a motion to dismiss.  Cardenas, 2007 WL 4245913, at *14.

The court acknowledges, however, the considerable overlap in the parties' arguments and the relevant case law regarding the factual issue of whether a defendant "knowingly" failed to register as required under SORNA, and whether the defendant was afforded sufficient "notice" as mandated by the Due Process Clause.  Based on the arguments advanced by the defendant and the case law addressing this issue, the outcome of the defendant's due process challenge rests on whether the defendant was entitled to notice that failing to register in compliance with state law could lead to federal prosecution, or whether notice that his conduct was illegal was sufficient to afford due process.

A defendant can violate SORNA "by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law."  U.S. v. Marcantonio, 2007 WL 2230773, at *2 (W.D. Ark. July 31, 2007).  The defendant "need not, to have committed the federal crime, have been told by some official that he had to register pursuant to SORNA."  Dixon, 2007 WL 4553720, at *4.  See also Hinen, 487 F. Supp. 2d at 754 ("The fact that the defendant may not have been advised of the specific requirements of SORNA is not determinative.").

Due process does not require that the defendant receive notice that his conduct violates a specific statute or federal law.  "Few offenders have ever had relevant sections of the U.S.

14

Code read to them before committing their crimes, yet they are expected to comply with it even so." U.S. v. Roberts, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007).  "If failure to have specific knowledge of the particular statute you have been accused of violating were a prerequisite to conviction, there would rarely, if ever, be a conviction." Samuels, 2008 WL 169792, at *4.  The fact that the defendant was unaware that federal charges could be filed if he failed to update his registration is of no consequence in a due process analysis. Samuels, 2008 WL 169792, at *5.  "Ignorance of a new, independent obligation under federal law (SORNA) to register as a sex offender is simply no excuse." Lovejoy, 516 F. Supp. 2d at 1038.

The Due Process Clause does not require notice that failure to register as a sex offender violates the federal law set forth in SORNA.  Rather, sufficient due process is afforded if the defendant had notice that failing to register or update his sex offender registration was illegal.  See U.S. v. Howell, 2008 WL 313200, at *8 (N.D. Iowa Feb. 1, 2008)(holding that a defendant who registered as a sex offender in Michigan, but failed to register upon moving to Iowa had sufficient notice his conduct was illegal, particularly since a defendant "is presumed to know the law"); Samuels, 2008 WL 169792, at *4 (denying defendant's due process claim where the defendant received no notice of the SORNA requirements, but knew he was required to update his sex offender registration under New York law); Dixon, 2007 WL 4553720, at *4 (denying defendant's due process challenge even though SORNA was enacted after he traveled and failed to register in another state and neither state had implemented the SORNA requirements); U.S. v. Gould, 526 F. Supp. 2d 538, 544-545 (D. Md. 2007)(holding defendant's prior knowledge of a duty to register under state law was effective notice under SORNA and

defeated his due process claim); U.S. v. Pitts, 2007 WL 3353423,
at *7 (M.D. La. Nov. 7, 2007)(holding due process requirements
were met where the defendant knew he was required to register
under state law); Lovejoy, 516 F. Supp. 2d at 1038 (denying
defendant's due process challenge where the defendant knew he was
required to register as a sex offender under North Dakota law,
and his failure to do so occurred after SORNA was enacted and the
Attorney General published its interim rule); U.S. v. May, 2007
WL 2790388, at *6 (S.D. Iowa Sept. 24, 2007)(denying a due
process challenge and holding ignorance of the law was no excuse
where the defendants knew they had an obligation to keep their
state sex offender registrations current and received information
regarding those registration obligations); U.S. v. Kent, 2007 WL
2746773, at *1 (S.D. Ala. Sept. 20, 2007)(denying defendant's due
process claim where, although he received no notice of SORNA's
requirements, the defendant received notice that failing to
register was illegal); U.S. v. Marcantonio, 2007 WL 2230773, at
*2 (W.D. Ark. July 31, 2007)(denying due process challenge where
the defendant knew he was under an obligation to register under
state law); Roberts, 2007 WL 2155750, at *2 (denying defendant's
motion to dismiss for lack of due process where the defendant was
not aware of SORNA, but knew he was required to update his sex
offender registration under state law and failed to do so upon
moving to another state); Hinen, 487 F. Supp. 2d at 754 (holding
those convicted of sex offenses are placed on constructive notice
that they may be subjected to future regulations because of the
nature of their criminal conviction).  But see, U.S. v. Aldrich,
2008 WL 427483, at *5 (D. Neb. Feb. 14, 2008)(Bataillon,
J.)(stating SORNA indictment violated due process where the
defendant's conviction occurred prior to enacting SORNA, the
defendant ignored annual notices to update or confirm Nebraska's
sex offender registry information, Nebraska had not amended its

16

law to comply with SORNA, there was no evidence the defendant knew of SORNA, and he did not actively fail to register).

Based on the evidence presented in this case, it is undisputed that both South Dakota and Nebraska law required the defendant to register as a sex offender and update that registration when his residential address changed.  The disclosure requirements of Nebraska law are substantially the same as those imposed under SORNA, although Nebraska allows five days for updating a registration while SORNA permits only three days, and the length and frequency of mandated registration updates may be greater under SORNA.  The defendant received written notice that failing to comply with the Nebraska's sex offender registration requirements could expose him to criminal prosecution.  He registered in Nebraska's Sex Offender Registry, updated his address in that registry several times, and he registered in South Dakota upon moving to that state.

Defendant Clark received sufficient notice that failing to maintain a current sex offender registration was illegal and could warrant criminal prosecution.  Irrespective of whether "SORNA" or the federal requirements of SORNA were ever mentioned by any state official, referenced in the Nebraska and South Dakota registry documents or the Nebraska written notice defendant signed, or incorporated into either states' statutes, due process principles do not foreclose this prosecution or justify dismissal of the indictment.

> 2.   SORNA is Unconstitutional as Exceeding Congress'
>      Authority under the Commerce Clause.

The defendant claims Congress cannot constitutionally require Craft to register under SORNA.  He argues that under

17

modern Commerce Clause jurisprudence, the indictment must be
dismissed because:  1) "Congress does not have the power to
impose registration requirements on individual citizens convicted
of purely intrastate offenses," (filing 17, p. 8); 2) "SORNA's
registration requirements clearly do not affect the channels of
interstate commerce," (filing 17, p. 8); 3) "SORNA requires sex
offenders to register regardless of whether they travel
interstate," and therefore SORNA was not enacted to "regulate and
protect the instrumentalities of interstate commerce, or persons
or things in interstate commerce," (filing 17, p. 8); and 4)
SORNA's registration requirements have no economic character or
effect on interstate commerce, are imposed irrespective of
whether the defendant traveled in interstate commerce, and SORNA
contains no findings explaining any connection between sex
offender registration and interstate commerce, (filing 17, pp. 8-
10).  The defendant cites U.S. v. Lopez, 514 U.S. 549 (1995), and
U.S. v. Morrison, 529 U.S. 598 (2000) in support of his argument.

    Article I, Section 8 of the Constitution grants Congress the
power "to regulate Commerce with foreign Nations, and among the
several States, and with the Indian tribes."  U.S. Const., art.
I. § 8, cl. 3.  The Supreme Court has defined three categories of
activity that Congress may regulate pursuant to its Commerce
Clause authority:  (1) "the use of channels of interstate
commerce;" (2) "the instrumentalities of interstate commerce, or
persons or things in interstate commerce, even though the threat
may come only from intrastate activities;" and (3) "activities
having a substantial relation to interstate commerce."  Lopez,
514 U.S. at 558-59.  "The Constitution requires a rational basis,
but nothing more than a rational basis, to conclude that targeted
activity substantially affects interstate commerce."  Dixon, 2007
WL 4553720, at *5 (citing Gonzales v. Raich, 545 U.S. 1 (2005)).

This court has previously held that SORNA's registration requirements and the related penalty provision of 18 U.S.C. § 2250 do not violate the Commerce Clause, (U.S. v. Hacker, 2008 WL 312689, at *2 (D. Neb. Feb. 1, 2008)(Smith Camp, J.)), and district courts throughout the nation have uniformly rejected the defendant's Commerce Clause arguments.  See e.g., U.S. v. Utesch, 2008 WL 656066, at *14 (E.D. Tenn. March 6, 2008); Howell, 2008 WL 313200, at *7-8; Dixon, 2007 WL 4553720, at *5; U.S. v. Elliott, 2007 WL 4365599, at *3 (S.D. Fla. Dec. 13, 2007); Gould, 526 F. Supp. 2d at 547; U.S. v. Brown, 2007 WL 4372829, at *3 (S.D.N.Y. Dec. 12, 2007); U.S. v. Adkins, 2007 WL 4335457, at *7 (N.D. Ind. Dec. 7, 2007); Cardenas, 2007 WL 4245913, at * 12; Pitts, 2007 WL 3353423, at *4; U.S. v. Ambert, 2007 WL 2949476, at *4 (N.D. Fla. Oct. 10, 2007); U.S. v. Beasley, 2007 WL 3489999, at *9 (N.D. Ga. Oct. 10, 2007); May, 2007 WL 2790388, at *7; U.S. v. Gonzales, 2007 WL 2298004, at *9 (N.D. Fla. Aug. 9, 2007); U.S. v. Mason, 510 F. Supp. 2d 923, 932 (M.D. Fla. 2007); Hinen, 487 F. Supp. 2d at 757-8; U.S. v. Templeton, 2007 WL 445481, at *4 (W.D. Okla. Feb. 7, 2007); U.S. v. Madera, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007).

Congress' intent in enacting SORNA was to create a mechanism for tracking sex offenders as they move between states.  Hacker, 2008 WL 312689, at *2; May, 2007 WL 2790388, at *7.  SORNA sets forth uniform requirements for the collection of information by state sex offender registries, the intent being to protect the public by creating a comprehensive national sex offender registry containing information accessible to citizens and law enforcement officers in every state.  Congress' public safety concerns were not unfounded.  "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault."  McKune v. Lile

536 U.S. 24, 33 (2002)(citing University of New Hampshire, Crimes
Against Children Research Center, Fact Sheet 5; Sex Offenses 24,
27 & U.S. Dept. of Justice, Bureau of Justice Statistics,
Recidivism of Prisoners Released in 1983, p. 6 (1997)).  Congress
was concerned with the possibility that sex offenders were
"slipping through the cracks of the disparate 50 state
registration systems," (Roberts, 2007 WL 2155750, at *2), and
SORNA's national registry is intended to ensure that sex
offenders cannot evade an individual state's sex offender
registration laws by merely relocating to another state.  Hinen,
487 F. Supp. 2d at 753.

     Congress is empowered under the Commerce Clause "to regulate
and protect the instrumentalities of interstate commerce, or
persons or things in interstate commerce, even though the threat
may come only from intrastate activities."  Lopez, 514 U.S. at
558.  "[T]he authority of Congress to keep the channels of
interstate commerce free from immoral and injurious uses has been
frequently sustained and is no longer open to question."
Caminetti v. United States, 242 U.S. 470, 491 (1917)(cited with
approval in Lopez, 514 U.S. at 558).

          Congress can certainly regulate interstate commerce to
          the extent of forbidding and punishing the use of such
          commerce as an agency to promote immorality, dishonesty
          or the spread of any evil or harm to the people of
          other states from the state of origin.  In doing this
          it is merely exercising the police power, for the
          benefit of the public, within the field of interstate
          commerce.

Brooks v. U.S., 267 U.S. 432, 436-437 (1925).

     Moreover, the federal government has jurisdiction to
prosecute under 18 U.S.C. § 2250(a)(2)(B) only if a person

20

required to register under SORNA "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country," (18 U.S.C. § 2250(a)(2)(B)), and as applied to the indictment against defendant Clark, interstate travel is a requisite element of the government's case.  Contrary to the defendant's argument, federal prosecution under § 2250(a)(2)(B) does not reach purely intrastate movement of sex offenders who fail to comply with a state's sex offender registration requirements.

Prosecution under 18 U.S.C. § 2250(a)(2)(B) focuses on the movement of potentially dangerous persons between states, thus providing both the rational basis and the interstate nexus found lacking in Lopez and Morrison.  SORNA's sex offender registry requirements serve to facilitate development of a national registry to monitor the interstate movements of sex offenders, the purpose being to protect the public from sex offenders whose interstate travel may thwart any one state's ability to monitor their movement and activities.  Consistent with every court decision found that addresses the issue, I likewise conclude Congress' enactment of SORNA and the related penalty provisions of 18 U.S.C. § 2250 did not exceed the authority granted under the Commerce Clause.  The defendant is not entitled to dismissal of the indictment based on an alleged violation of the Commerce Clause.

      3.    SORNA is Unconstitutional as Exceeding Congress' Authority under the Tenth Amendment.

The defendant seeks dismissal of the indictment because "SORNA's registration requirements, which impose a federal obligation on offenders to register in individual state sex offender registries, are an unconstitutional encroachment

21

of federal power on state sovereignty." Filing 17, p. 15. Every
federal decision found on this issue has rejected the defendant's
Tenth Amendment argument. Hacker, 2008 WL 312689, at *2. See
also, Utesch, 2008 WL 656066, at *14-15; Gould, 526 F. Supp. 2d
at 549; Brown, 2007 WL 4372829, at *3; Cardenas, 2007 WL 4245913,
at *14; Pitts, 2007 WL 3353423, at *9.

      "The powers not delegated to the United States by the
Constitution, nor prohibited by it to the States, are reserved to
the States respectively, or to the people." U.S. Const. amend.
X.  The federal government "may neither issue directives
requiring the States to address particular problems, nor command
the States' officers, or those of their political subdivisions,
to administer or enforce a federal regulatory program." Printz
v. U.S., 521 U.S. 898, 935 (1997). Conscripting or commandeering
state officials to administer and enforce a federal regulatory
program violates the Tenth Amendment. Printz, 521 U.S. at 935.

      The defendant argues that the requirements imposed on the
state by SORNA violate the Tenth Amendment, and therefore his
indictment must be dismissed. A threshold question is whether
the defendant has standing to raise such a claim. The United
States Supreme Court has held that a private citizen, acting on
his own behalf and not in an official capacity or on behalf of
the state citizenry, lacks standing to raise a Tenth Amendment
claim. See Tenn. Elec. Power Co. v. Tenn. Valley Auth., 306 U.S.
118, 144 (1939). See also Brooklyn Legal Services Corp. v. Legal
Services Corp., 462 F.3d 219, 235 (2d Cir. 2006); Medeiros v.
Vincent, 431 F.3d 25, 34 (1st Cir. 2005). At least one court has
held that a criminal defendant indicted under SORNA lacks
standing to challenge the indictment on Tenth Amendment grounds.
Beasley, 2007 WL 3489999, at *10.

                                22

The record further establishes that, to date, neither Nebraska nor South Dakota have implemented any provision of SORNA. Their sex offender registration laws have not changed in response to SORNA or the Attorney General's proposed, and yet to be finalized, guidelines and regulations. Accordingly, there is no basis for claiming the defendant's indictment arose because Nebraska or South Dakota were "commandeered" or "conscripted" into complying with SORNA's requirements. See Utesch, 2008 WL 656066, at *15 (denying defendant's Tenth Amendment claim where the defendant was being prosecuted because he moved from Tennessee to Iowa and failed to comply with Iowa's re-registration requirements, and neither states' registration requirements had changed in response to the enactment of SORNA); Brown, 2007 WL 4372829, at *3 (finding no Tenth Amendment violation where "those individuals required by the Act to register with state sexual offender registries are already obligated to register pursuant to state registration laws").

Not only has neither Nebraska nor South Dakota changed its sex offender registration laws to comply with SORNA, but SORNA does not require a state to change its law or procedures to comply with the federal sex offender registration program. Rather, a state can choose to implement SORNA or, in the alternative, choose not to implement SORNA and receive a reduction in federal funding. Pursuant to Congress' constitutionally authorized spending power, (U.S. Const. Art. I, § 8, cl. 1), Congress "may attach conditions on the receipt of federal funds. . . 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" South Dakota v. Dole, 483 U.S. 203, 206 (1987)(quoting Fullilove v. Klutznick, 448 U.S. 448, 474 (1980)).

23

The Tenth Amendment is not violated when the federal government encourages states to enact SORNA's provisions as a condition to receipt of federal funding.  <u>Hacker</u>, 2008 WL 312689, at *2; <u>Gould</u>, 526 F. Supp. 2d at 549; <u>Cardenas</u>, 2007 WL 4245913, at *14.

Finally, SORNA was enacted pursuant to Congress' legitimate exercise of authority under the Commerce Clause.  As such, SORNA does not violate the Tenth Amendment.  <u>U.S. v. Crawford</u>, 115 F.3d 1397, 1401 (8th Cir. 1997).  See also, <u>Hacker</u>, 2008 WL 312689, at *2; <u>Cardenas</u>, 2007 WL 4245913, at *14.

The defendant's motion to dismiss based of the Tenth Amendment must be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Warren K. Urbom, United States Senior District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion to dismiss, filing 16, be denied in all respects.

The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

IT IS FURTHER HEREBY ORDERED:  Trial is set to commence at 9:00 a.m. on April 28, 2008, for a duration of three trial days before the Honorable Warren K. Urbom, United States Senior District Judge.  Jury selection will be at commencement of trial.

DATED this 28th day of March, 2008.

BY THE COURT:

s/ *David L. Piester*

David L. Piester
United States Magistrate Judge

24