IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CR3168 |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES BYRON CRAFT, | ) | MEMORANDUM AND ORDER ON THE |
| | ) | DEFENDANT'S OBJECTIONS TO THE |
| Defendant. | ) | MAGISTRATE JUDGE'S REPORT AND |
| | ) | RECOMMENDATION |

In an indictment filed on December 11, 2007, the defendant, James Byron Craft, was charged with violating 18 U.S.C. § 2250(a). (See filing 1.) The defendant has moved to dismiss the indictment. (See filing 16.) In accordance with 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Criminal Procedure 59(b)(1), United States Magistrate Judge David L. Piester has recommended that I deny the defendant's motion. (See filing 28.) Now before me are the defendant's objections to the magistrate judge's report and recommendation. (See filing 29.) In the course of my de novo review of those portions of the magistrate judge's report and recommendation that the defendant challenges, see United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003); 28 U.S.C. 636(b)(1); Fed. R. Crim. P. 59(b)(3), I have studied the magistrate judge's report and recommendation, (filing 28), the documents filed by the parties, (filings 16, 17, 24, 29, 30), and exhibits submitted by the parties at the hearing before the magistrate judge, (see filing 27).[1] After carefully reviewing these materials, I find that the magistrate judge's recommendation should be adopted. The defendant's objections will be overruled, and his motion to dismiss will be denied.

---

[1] I have also reviewed an audio recording of the hearing before the magistrate judge; however, as the magistrate judge notes in his report, no testimony was offered at this hearing. (See Report and Recommendation, filing 28, at 1-2.)

## I. BACKGROUND

The relevant facts, which are set forth clearly and efficiently in the magistrate judge's report, are undisputed. They will be summarized here only in the interest of convenience.

On September 6, 2002, the defendant was convicted of first degree sexual assault in violation of Revised Statutes of Nebraska section 28-201, and was sentenced to four years of probation. (Def.'s Ex. 101, ¶ 1.) On October 10, 2002, the defendant registered as a sex offender in accordance with the Nebraska Sex Offender Registration Act, Neb. Rev. Stat. §§ 29-4001 to 29-4014. (Pl.'s Ex. 1 at 2.) On March 20, 2003, the defendant acknowledged receiving a written notice of his obligations under the Act, which included requirements that he confirm his residential information at least annually, provide written notice of any address changes to the relevant county sheriffs, and, in the event of an out-of-state move, register as a sex offender in accordance with that state's laws. (Id. at 10-11.) This written notice also provided that violating the Nebraska Sex Offender Registration Act would amount to a criminal offense. (Id. at 11.)

From the date of his initial registration on October 10, 2002, until February 23, 2007, the defendant moved frequently and updated his registration information several times. (Pl.'s Ex. 1 at 2.) On August 3, 2007, the defendant signed a "Sex Offender Registration Change of Information" form indicating that he would be moving to Yankton, South Dakota, on August 4, 2007. (See Pl.'s Ex. 1 at 6.) On August 9, 2007, the defendant registered as a sex offender in South Dakota. (Pl.'s Ex. 2 at 3.)

On or about November 28, 2007, the a member of the Hall County Sheriff's Office arrested the defendant in Grand Island, Nebraska, after receiving information that the defendant had been residing in Grand Island. (E.g., Def.'s Ex. 101, ¶ 3.) The sheriff's office later obtained information that the defendant applied for and obtained employment in Nebraska on November 9, 2007, and that he claimed to have an address in Grand Island, Nebraska, as of that date. (Id.) The defendant represents that he was charged with failing to register as a sex offender and was released from state custody on November 29, 2007. (See filing 17 at 2.)

On December 11, 2007, a single-count indictment was filed against the defendant in this court. (See filing 1.) The indictment states,

> From on and about September 1, 2007, and continuing until on or about

>November 28, 2007, in the District of Nebraska, [the defendant], having previously been convicted in the State of Nebraska of an offense requiring him to register as a sex offender to wit: Attempted First Degree Sexual Assault, traveled in interstate commerce from South Dakota to Nebraska, and knowingly failed to register and update a registration as a sex offender in the States of Nebraska, where he resided, and South Dakota, as required by the Sex Offender Registration and Notification Act.
>
>In violation of 18 United States Code, Section 2250(a).

(Id. at 1.)

The Sex Offender Registration and Notification Act ("SORNA") appears in Title I of The Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, §§ 101-155, 120 Stat. 587, 590-611 (2006) (codified as 42 U.S.C. §§ 16901-16962). Its Declaration of Purpose states that SORNA is intended to "protect the public from sex offenders and offenders against children" through the establishment of "a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. To achieve this goal, SORNA provides that "[e]ach jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of this title," 42 U.S.C. § 16912(a), establishes implementation deadlines for the jurisdictions, 42 U.S.C. § 1624, and warns that "a jurisdiction that fails, as determined by the Attorney General, to substantially implement [SORNA] shall not receive 10 percent of the funds that would otherwise be allocated" under the Bureau of Justice Assistance Grant Programs, 42 U.S.C. § 16925; see also 42 U.S.C. §§ 3750 et seq. The deadlines for jurisdictions' implementation of SORNA have not yet lapsed; indeed, the Attorney General has not finalized the "guidelines and regulations to interpret and implement" SORNA, 42 U.S.C. § 16912(b), though proposed guidelines have been published in the Federal Register, Vol. 72, No. 103 (May 30, 2007), and have been included in the record (see Def.'s Ex. 104). It is undisputed that "[t]he State of Nebraska continues to operate [its sex offender registry] under the same statutory sections (i.e., pursuant to Neb. Rev. Stat. §[§] 29-4001 et seq.) without regard to proposed guidelines promulgated by the United States Attorney General pursuant to SORNA." (Def.'s Ex. 101, ¶ 5.)

SORNA also requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the

offender is a student." 42 U.S.C. § 16913(a). Regarding initial registration, SORNA states,

> The sex offender shall initially register–
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

42 U.S.C. § 16913(b). It also provides that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to proscribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." 42 U.S.C. § 16913(d). On February 28, 2007, the Attorney General issued a regulation stating that the requirements of SORNA "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R § 72.3. The regulation also includes the following example:

> A sex offender is convicted by a state jurisdiction in 1997 for molesting a child and is released following imprisonment in 2000. The sex offender initially registers as required, but disappears after a couple of years and does not register in any other jurisdiction. Following the enactment of [SORNA], the sex offender is found to be living in another state and is arrested there. The sex offender has violated the requirement under [SORNA] to register in each state in which he resides, and could be held criminally liable under 18 U.S.C. 2250 for the violation because he traveled in interstate commerce.

Id. The regulation does not, however, "proscribe rules for the registration" of sex offenders who are unable to comply with subsection (b).

Regarding "keeping the registration current," SORNA states,

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913(c). States are required to "provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to

comply" with these registration requirements.  42 U.S.C. § 16913(e),

SORNA also includes a notification provision, which states:

(a) In general
An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register–

>   (1)   inform the sex offender of the duties of a sex offender under this subchapter and explain those duties;
>   (2)   require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and
>   (3)   ensure that the sex offender is registered.

(b) Notification of sex offenders who cannot comply with subsection (a) of this section
The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section.

42 U.S.C. § 16917.  Again, however, the Attorney General has not yet "prescribe[d] rules for the notification of sex offenders who cannot be registered in accordance with subsection (a)."

If a sex offender fails "to comply with the requirements of a registry," "[a]n appropriate official" must "notify the Attorney General and appropriate law enforcement agencies" of the failure "and revise the jurisdictions's registry to reflect the nature of that failure."  42 U.S.C. § 16922.

As noted above, the defendant has been charged with violating 18 U.S.C. § 2250(a).  (See filing 1.)  That section provides,

Whoever–
>   (1)   is required to register under the Sex Offender Registration and Notification Act;
>   . . . .
>   (2)(B)  travels in interstate or foreign commerce . . . ; and
>   (3)   knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
shall be fined under this title or imprisoned not more than 10 years, or both.

On January 18, 2008, the defendant moved to dismiss the indictment.  (See filing 16.)  The defendant submitted four main arguments in support of his motion: 1) because SORNA has

5

not yet been "accepted and implemented" by Nebraska or South Dakota, and because he received no notice of SORNA's requirements when he registered as a sex offender in South Dakota on August 9, 2007, or at any other time, his prosecution under § 2250(a) is inconsistent with the Fifth Amendment's Due Process Clause; 2) Congress lacked authority under the Commerce Clause to enact SORNA's registration requirements, which are set forth at 42 U.S.C. §§ 16913-16916, because those requirements "direct individuals convicted of purely local offenses to register as state sex offenders"; 3) the "travel element" appearing in § 2250(a)(2)(B) is insufficient to make that statute "a legitimate exercise of Congress's Commerce Clause authority"; and 4) SORNA's registration requirements "are an unconstitutional encroachment . . . on state sovereignty" in violation of the Tenth Amendment. (See filing 17 at 4-17.) As I noted above, the magistrate judge considered the defendant's arguments and has recommended that they be rejected. (See generally filing 28.) The defendant has objected to the magistrate judge's report and recommendation, (see filings 29-30), and my analysis of these objections follows.

## II.  ANALYSIS

The defendant has objected to the magistrate judge's rejection of each of the arguments that he submitted in support of his motion to dismiss. I shall consider each of these arguments in turn.

I note preliminarily that the defendant's arguments, each of which raises challenges to the constitutionality of the relevant statutes, are properly raised in a motion to dismiss. E.g., United States v. Lopez, 514 U.S. 549, 551-52 (1995) (affirming dismissal of indictment on the ground that the Gun-Free School Zones Act of 1990 was not a constitutional exercise of Congress's powers to regulate interstate commerce).

### A.  Whether the Defendant's Prosecution Violates Due Process Principles of Notice and Fair Warning

The defendant argues first "that his prosecution under SORNA violates the notice and fair warning requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution." (Filing 30 at 1.) More specifically, citing Lambert v. California, 355 U.S. 225 (1957), the defendant argues that actual notice is required when "passive" conduct is

criminalized, and here there is no evidence that the defendant had actual notice of SORNA's registration requirements.  (See id. at 2-3.)

In Lambert, the Supreme Court held that a defendant's conviction under Los Angeles' felon registration ordinance violated principles of due process because there was no evidence that the defendant possessed actual knowledge of the duty to register.  The Court recognized that actual knowledge is not required when "the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed," is criminalized, noting that "[t]he rule that 'ignorance of the law will not excuse' is deep in our law."  355 U.S. at 228 (citations omitted).  It found, however, "that actual knowledge of the duty to register or proof of the probability of such knowledge" is required "where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case."  Id. at 228-29.  The Court observed that the "severity" of punishing passive conduct, such as failing to register, "lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it."  Lambert, 355 U.S. at 229.  Thus, the Court concluded that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he many not be convicted consistently with due process.  Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community."  Id.

Lambert, therefore, "carves out a very limited exception to the general rule that ignorance of the law is no excuse."  United States v. Hutzell, 217 F.3d 966, 968 (8th Cir. 2000).  The exception applies when 1) the defendant's conduct was "wholly passive," 2) the defendant was "unaware of any wrongdoing" (i.e., the default was "entirely innocent"), and 3) there is an absence of "circumstances that should alert the doer to the consequences of his deed"–or, more specifically, an absence of circumstances that "move [him] to inquire as to the necessity of registration."  Lambert, 355 U.S. at 228-29.

In Hutzell, the Eighth Circuit considered and rejected an argument that a charge under 18 U.S.C. § 922(g)(9) ought to be dismissed under the Lambert exception[2] and further defined the

---

[2]Section 922(g)(9) "makes it unlawful for anyone 'who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess . . . any firearm.'"  Hutzell, 217 F.3d at

7

scope of the exception.  Specifically, the Eighth Circuit found that 1) the Lambert exception is "unavailing" if the defendant's "lack of awareness of the prohibition was objectively unreasonable," and 2) in accordance with United States v. Freed, 401 U.S. 601, 608 (1971), the Lambert exception can apply "only to prohibitions on activities that are not per se blameworthy." Hutzell, 217 F.3d at 968.

After carefully studying the Supreme Court's decision in Lambert and the Eighth Circuit's decision in Hutzell, I find that in this case, principles of due process do not require proof of the defendant's "actual knowledge of the duty to register or proof of the probability of such knowledge." Lambert, 355 U.S. at 229.  It is true that SORNA criminalizes the same sort of "wholly passive" conduct–failure to register–that was at issue in Lambert.  In other respects, however, the instant case is distinguishable.  Clearly, it cannot be said that the defendant was unaware of any wrongdoing or that his failure to register was "entirely innocent."  Nor can it be said that there was an absence of circumstances that should have alerted the defendant to the consequences of failing to register or moved him to inquire as to the necessity of registration.

In addition, it is not clear to me that the defendant's "lack of awareness of the prohibition was objectively []reasonable." Hutzell, 217 F.3d at 968.  In Hutzell, the court explained,

> The district court observed (correctly, we believe) that an individual's domestic violence conviction should itself put that person on notice that subsequent possession of a gun might well be subject to regulation.  We also agree with the observation in United States v. Beavers, 206 F.3d 706, 710 (6th Cir. 2000), cert. denied, 529 U.S. 1121, 120 S. Ct. 1989, 146 L. Ed. 2d 815 (2000), that "it should not surprise anyone that the government has enacted legislation in an attempt to limit the means by which persons who have a history of domestic violence might cause harm in the future."  Although an individual's right to bear arms is constitutionally protected, the possession of a gun, especially by anyone who has been convicted of a violent crime, is nevertheless a highly regulated activity, and everyone knows it.

---

967 (quoting 18 U.S.C. § 922(g)(9)).  I note in passing that the defendant relies upon United States v. Ficke, 58 F. Supp. 2d 1071 (D. Neb. 1999), in support of his argument that the Lambert exception applies in his case.  (See filing 30 at 3-4.)  In Ficke, the district court held that the defendant's prosecution under § 922(g)(9) violated the notice and fair warning requirements of the due process clause of the United States Constitution.  It seems to me, however, that Ficke is not good law in the wake of Hutzell.

8

> No one can reasonably claim, we think, to be unaware of the current level of concern about domestic violence; it is the subject of daily news reports and other media attention. There is evidence, in addition, that § 922(g)(9) was the subject of considerable public scrutiny and discussion both before and after its enactment. At any rate, in the present social circumstances, we believe that it is simply disingenuous for Mr. Hutzell to claim that his conviction under § 922(g)(9) involved the kind of unfair surprise that the fifth amendment prohibits.

217 F.3d at 968-69 (citations omitted). I would not go so far as to say that it is "disingenuous" for the defendant to claim that his prosecution under 18 U.S.C. § 2250(a) violated the notice and fair warning requirements of the Fifth Amendment's Due Process Clause; indeed, the defendant's case presents a number of unique circumstances–including the absence of guidelines from the Attorney General and the fact that the relevant states have not yet implemented SORNA–that seem to lend support his argument that he could not reasonably have known that his failure to register amounted to a federal crime. Nevertheless, it seems to me that the court's reasoning in Hutzell is applicable here. In particular, "it should not surprise anyone" that the government has enacted legislation that makes the failure to register as a sex offender a federal offense. In fact, SORNA's "predecessor" statute, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. No. 103-322, 108 Stat. 1976, 2038-2042 (1994), as amended by the Pam Lynchner Sexual Offender Tracking and Identification Act of 1996, Pub. L. No. 104-236, § 1-11, 10 Stat. 3093, 3096-98 (1996) (codified as amended at 42 U.S.C. §§ 14071-14072, 14703), provided that persons who fail to register under states' sexual offender registration programs could face criminal sanctions. See 42 U.S.C. § 14072(i). In other words, the notion that a person violates federal law by failing to register as a sex offender is not new.

In short, I am not persuaded that the Lambert exception to the general rule that "ignorance of the law is no excuse" applies in this case. Although SORNA does criminalize "passive" conduct, the defendant acknowledged receiving actual notice that he was required to register as a sex offender and keep his registration current. This is what SORNA requires of him. See 42 U.S.C. § 16913(a). He was warned specifically that his failure to register would amount to a criminal offense under state law, and the defendant appears to have complied with his registration obligations between October 2002 and August 2007. Thus, the defendant was not "unaware of any wrongdoing" when he failed to register later in 2007, and

9

circumstances–including his prior warnings and experience registering as a sex offender–should have moved him to inquire as to the necessity of registering. Under the circumstances, it cannot be said that he had no "opportunity either to avoid the consequences of the law or to defend any prosecution brought under it." Lambert, 355 U.S. at 229. I therefore find that the defendant's prosecution under SORNA does not violate his rights to notice and fair warning under the Due Process Clause of the Fifth Amendment.

The defendant argues, "[U]ntil Nebraska implements procedures to register that comply with SORNA, there is no way a person can know if he or she has complied with SORNA by even registering under Nebraska (state) law." (Filing 30 at 4.) The defendant's argument might have force if he had in fact registered as a sex offender in accordance with applicable state law and was nevertheless facing prosecution for violating SORNA. This is not the case here, however, and it seems to me that speculation as to whether the defendant would have, or could have, faced prosecution under SORNA if he had complied with Nebraska's Sex Offender Registration Act does not support his argument that the instant indictment must be dismissed on the ground that his rights to notice and fair warning have been violated.

SORNA requires sex offenders to "register, and keep the registration current, in each [State] where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a); see also id. § 16911(10)(A) ("The term 'jurisdiction' means . . . A State."). In other words, it requires sex offenders to register in the sex offender registries maintained by the states. See 42 U.S.C. § 16911(9). It is true that SORNA also requires states to "substantially implement" certain changes to their sex offender registries within a certain time period or sacrifice federal funds, see 42 U.S.C. §§ 16912, 16924-16925, and I understand that the fact that these changes have not yet been implemented underlies the defendant's due process argument. But this fact (i.e., that the changes required by SORNA have not yet been made) does not mean that SORNA cannot, in a manner consistent with due process, make the failure to register in accordance with state law a federal offense.

Finally, I note that my decision on this issue conflicts with Chief Judge Bataillon's opinion in United States v. Aldrich, No. 8:07CR158, 2008 WL 427483 (D. Neb. Feb. 14, 2008). It appears, however, that the Chief Judge's decision was based in significant part upon the fact

that the defendant's failure to register in that case occurred before SORNA was made retroactively applicable, and therefore "he could not knowingly fail to register under SORNA. See id. at 9, 2008 WL 427483 at *5. To the extent that the Chief Judge's decision Aldrich is based on Lambert and Ficke, however, I respectfully disagree with his analysis for the reasons explained above.[3]

The defendant's objection to the magistrate judge's analysis of his due process argument is overruled, and the magistrate judge's report and recommendation on this issue is adopted in full.

**B.      Whether Congress Lacked Authority Under the Commerce Clause to Enact SORNA's Registration Requirements or 18 U.S.C. § 2250(a)**

The defendant argues next that SORNA's registration requirements, see 42 U.S.C. §§ 16913-16916, were not validly enacted pursuant to Congress's authority to regulate interstate commerce. I have reviewed the defendant's argument de novo, and I find that the magistrate judge's analysis of the defendant's arguments is correct. (See Report and Recommendation, filing 28, at 17-20.) This analysis need not be repeated here. I shall, however, address the defendant's specific objections to the magistrate judge's analysis.

First, the defendant argues that the magistrate judge's analysis is infirm because it relies upon United States v. Hacker, No. 8:07CR243, 2008 WL 312689 (D. Neb. Feb. 2, 2008), which in turn relies upon United States v. Lara, 541 U.S. 193 (2004). (See filing 30 at 4-5.) The thrust of the defendant's argument seems to be that because Lara "is a case involving jurisdiction over Native Americans," it is not a relevant precedent. (See filing 30 at 5.) In his report, the magistrate judge cited Hacker for the propositions that "[t]his court has previously held that SORNA's registration requirements and the related penalty provision of 18 U.S.C. § 2250 do not violate the Commerce Clause," and that "Congress's intent in enacting SORNA was to create a mechanism for tracking sex offenders as they move between states." (See Report and Recommendation, filing 28, at 19.) Even if Hacker erroneously relied upon Lara, the magistrate

---

[3]I note parenthetically that, as the magistrate judge's thorough report indicates, the great weight of authority on this issue is contrary to Aldrich. (See Report and Recommendation, filing 28, at 13-17.)

judge's references to Hacker do not render infirm his thorough, well-supported analysis of the defendant's Commerce Clause argument.

Next, the defendant argues that SORNA is not distinguishable "from the statutes that were struck down by the Supreme Court in" United States v. Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000), because SORNA does not regulate an economic activity.

In Lopez, the Supreme Court found that the Gun-Free School Zones Act of 1990, which "made it a federal offense 'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone,'" exceeded Congress' authority under the Commerce Clause. 514 U.S. at 551 (quoting 18 U.S.C. § 922(g)(1)(A) (1988 Supp. V)). The Court explained that there are "three broad categories of activity that Congress may regulate under its commerce power." Id. at 558 (citations omitted). "First, Congress may regulate the use of the channels of interstate commerce." Id. (citations omitted). "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." Id. (citations omitted). "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." Id. at 558-59 (citations omitted). The Court then observed that § 922(g) could not fall within either of the first two categories, and that "if § 922(g) is to be sustained, it must be under the third category as a regulation of an activity that substantially affects interstate commerce." Id. at 559. The Court found, however, that § 922(g) was distinguishable from the "wide variety of congressional Acts regulating intrastate economic activity where [the Court has] concluded that the activity substantially affected interstate commerce," id., stating,

> Section 922(g) is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. Section 922(g) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect

12

interstate commerce.

Id. at 561 (footnote omitted).  In addition, the Court found that "§ 922(g) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce."  Id.

In United States v. Morrison, the Court held that Congress lacked constitutional authority under the Commerce Clause to enact the portion of the Violence Against Women Act of 1994 that provided "a federal civil remedy for the victims of gender-motivated violence."  529 U.S. at 601-02 (citing 42 U.S.C. § 13981).  Citing Lopez, the Court reaffirmed that there are three broad categories of activity that Congress may regulate under the Commerce Clause, and it noted that the petitioners had argued only that § 13981 should be sustained "as a regulation of activity that substantially affects interstate commerce."  529 U.S. at 609.  The Court added, "Given § 13981's focus on gender-motivated violence wherever it occurs (rather than violence directed at the instrumentalities of interstate commerce, interstate markets, or things or persons in interstate commerce), we agree that this is the proper inquiry."  Id.  The Court then reviewed the "[s]ignificant considerations" that "contributed to [its] decision" in Lopez, two of which have been noted above by me.  First, the Court noted that "Lopez's review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor."  Id. at 611 (citing Lopez, 514 U.S. at 559-60).  Second, the Court observed that the statute at issue in Lopez "contained 'no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.'"  Id. at 611-12 (quoting Lopez, 514 U.S. at 562).  Third, the Court "noted that neither § 922(g) 'nor its legislative history contain[s] express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone.'"  Id. at 612 (quoting Lopez, 514 U.S. at 562) (quotation marks omitted).  Fourth and finally, the Court noted that its "decision in Lopez rested in part on the fact that the link between gun possession and a substantial effect on interstate commerce was attenuated."  Id.  The Court then applied these considerations to its analysis of § 13981, and found that although the statute was "supported by numerous [congressional] findings

13

regarding the serious impact that gender-motivated violence has on victims and their families," the remaining three factors compelled a conclusion that the statute was not a valid exercise of Congress' Commerce Clause authority. See id. at 613-16.  The Court stated,

> We . . . reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.  The Constitution requires a distinction between what is truly national and what is truly local.  In recognizing this fact we preserve one of the few principles that has been consistent since the Clause was adopted.  The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.  Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.

Id. at 617-18 (citations and footnote omitted).

Lopez and Morrison do lend support to the defendant's argument that SORNA and its enforcement provision (i.e., 18 U.S.C. § 2250(a)) do not qualify "as a regulation of activity that substantially affects interstate commerce." Morrison, 529 U.S. at 609.  It is true that § 2250(a) contains the sort of "jurisdictional element" that was found to be lacking in the statutes at issue in Lopez and Morrison.  Nevertheless, SORNA and § 2250(a) do not seem to regulate an "economic endeavor," which, as the Court explained in Morrison, is of central importance to the analysis of whether a statute should be sustained "as a regulation of activity that substantially affects interstate commerce."  529 U.S. at 609.

Before I may invalidate the relevant statutes, however, it is incumbent upon the defendant to make "a plain showing that Congress has exceeded its constitutional bounds." United States v. Morrison, 529 U.S. 598, 607 (2000).  Even if I assume that the defendant has made an adequate showing that, in accordance with Lopez and Morrison, the relevant statutes do not fall within the third of the three broad categories of activity that Congress may regulate pursuant to its Commerce Clause powers, he has made no showing that the statutes do not fall within the other two categories.  As the Court noted in Lopez, "Congress may regulate the use of the channels of interstate commerce," and "[t]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses . . . is no longer open to question." 514 U.S. at 558 (quoting Caminetti v. United States, 242 U.S. 470, 491 (1917)).  Also, "Congress

14

is empowered to regulate . . . persons or things in interstate commerce, even though the threat may come only from intrastate activities." Id.  The magistrate judge explained in his report that SORNA and its enforcement provision–which were intended "to create a mechanism for tracking sex offenders as they move between states"–fall within these particular categories.  (Report and Recommendation, filing 28, at 19; see also id. at 20 (quoting, inter alia, Caminetti, 242 U.S. at 491; Brooks v. United States, 267 U.S. 432, 436-37 (1925)).)  After reviewing the issue de novo, I find that the magistrate judge is correct.

      Finally, the defendant suggests that the constitutionality of SORNA's registration requirements must be assessed as part of a "separate inquiry" from the analysis of § 2250(a).  As the magistrate judge noted, SORNA's registration requirements exist as a part of a broad effort to track sex offenders as they move between the states and "ensure that sex offenders cannot evade an individual state's sex offender registration laws by merely relocating to another state." (Report and Recommendation, filing 28, at 19-20.)  This means, of course, that SORNA requires sex offenders to register in the state where they initially find themselves, and it is certainly true that a registered offender may choose never to leave this "state of origin."  I am not persuaded, however, that the possibility that certain offenders may not travel between the states means that SORNA falls beyond Congress' power to "keep the channels of interstate commerce free from immoral and injurious uses."  Lopez, 514 U.S. at 558 (quoting Caminetti, 242 U.S. at 491).

      There is a presumption that SORNA and § 2250(a) were validly enacted pursuant to Congress' authority under the Commerce Clause, and the defendant has not made a "plain showing that Congress has exceeded its constitutional bounds.  Morrison, 529 U.S. at 607.  I must therefore overrule the defendant's objection to the magistrate judge's analysis of his Commerce Clause challenge, and I shall adopt the magistrate judge's report and recommendation on this issue.

### C.   Whether SORNA Violates the Tenth Amendment

     The defendant argues that because "SORNA is not a valid exercise of Congress's power under the Commerce Clause," the magistrate judge erred by rejecting the defendant's claim that "Congress exceeded its authority under the Tenth Amendment" when it enacted SORNA.  (Filing 30 at 7.)  I have found, however, that the relevant statutes were validly enacted pursuant to

Congress' authority under the Commerce Clause, and therefore I must overrule the defendant's objection.  See, e.g., United States v. Crawford, 115 F.3d 1397 (8th Cir. 1997) (quoting New York v. United States, 505 U.S. 144, 156 (1992)).

**IT IS ORDERED** that:

1. the defendant's objections to the magistrate judge's report and recommendation, filing 29, are overruled;

2. the magistrate judge's report and recommendation, filing 28, is adopted; and

3. the defendant's motion to dismiss, filing 16, is denied.

Dated April 23, 2008.

                        BY THE COURT


                        s/ Warren K. Urbom
                        United States Senior District Judge